******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARY FAY ET AL. *v.* DENISE W. MERRILL,
SECRETARY OF THE STATE
(SC 20477)

*Syllabus*

Pursuant to statute (§ 9-323), any elector or candidate who claims that he
is aggrieved by any ruling of any election official in connection with
any election for, among other public offices, a representative in Con-
gress, may bring his complaint to any justice of this court.

The plaintiffs, candidates in the August, 2020 primary election for the Repub-
lican Party's nomination for the office of United States representative
for Connecticut's First and Second Congressional Districts, filed the
present action with this court, pursuant to § 9-323, seeking certain relief
in connection with the issuance by the defendant, the secretary of the
state, of an application for absentee ballots that added "COVID-19" as
a category for absentee voting. The defendant had issued the application
pursuant to an executive order issued by the governor, in response
to the ongoing coronavirus disease 2019 (COVID-19) global pandemic,
which, inter alia, modified the statute (§ 9-135) setting forth the reasons
an eligible voter may vote by absentee ballot by adding COVID-19 as a
reason why a voter may be unable to appear at his or her polling place
on the day of the election. The plaintiffs sought a judgment declaring
that the application was unconstitutional and based on an erroneous
interpretation of the governor's executive order and § 9-135. The plain-
tiffs also sought a prohibitive injunction precluding the defendant from
mailing or distributing copies of the application to any Connecticut
voters and a mandatory injunction directing the defendant to recall any
copies already mailed or distributed. The defendant filed a motion to
dismiss the action on the ground that this court lacked subject matter
jurisdiction, claiming that a primary is not an election for purposes of
§ 9-323 and that the plaintiffs should have brought this action in the
Superior Court pursuant to the statute (§ 9-329a) governing disputes
concerning primaries. Thereafter, the plaintiffs filed a motion for an
order enjoining the defendant from, inter alia, distributing the applica-
tions until this court had an opportunity to decide the matter. *Held* that
this court lacked subject matter jurisdiction over the plaintiffs' action
because a primary is not an election for purposes of § 9-323 and that
the proper vehicle for the plaintiffs' challenge to the application for
absentee ballots was to bring this case in the Superior Court pursuant
to § 9-329a, and, accordingly, this court granted the defendant's motion
to dismiss: the language of § 9-323, which applies only to elections for
federal officials, along with that statute's relationship to the other elec-
tion contest statutes, including § 9-323a, which expressly governs pri-
maries, strongly supported the conclusion that a federal congressional
primary is not an election for purposes of § 9-323, as "election" is statuto-
rily (§ 9-1 (d)) defined as "any elector's meeting at which the electors
choose public officials," whereas the meaning of the term "primary,"
as gleaned from dictionaries because it is not defined by statute, focuses
on choosing a candidate for office; moreover, § 9-329a, by its own plain
and unambiguous terms, furnishes a remedy for disputes arising from
federal congressional primaries, and allowing the plaintiffs to bypass
the Superior Court and to proceed directly to this court by filing their
action therein would render § 9-329a superfluous; furthermore, this court
declined the plaintiffs' request to transfer this case to the Superior Court
pursuant to the applicable rule of practice (§ 65-4) because that rule is
applicable only to matters within the jurisdiction of the Supreme and
Appellate Courts, and contains no language about cases that belong in
the Superior Court in the first instance, and no action was necessary
on the plaintiffs' motion for an order in light of this court's dismissal
of the action for lack of subject matter jurisdiction.

Heard July 20—officially released August 3, 2020*

*Procedural History*

Action seeking, inter alia, an order rescinding the

application for absentee ballot for the August, 2020 primary elections prepared by the Secretary of the State, and for other relief, brought, pursuant to General Statutes § 9-323, to *Richard A. Robinson*, Chief Justice of the Supreme Court, who conducted a hearing on the plaintiffs' motion for an order and the defendant's motion to dismiss the complaint. *Dismissed.*

*Proloy K. Das*, with whom, on the brief, was *Matthew A. Ciarleglio*, for the appellants (plaintiffs).

*William Tong*, attorney general, with whom, on the brief, were *Clare Kindall*, solicitor general, and *Michael K. Skold*, *Maura Murphy Osborne*, and *Alma R. Nunley*, assistant attorneys general, for the appellee (defendant).

*William M. Bloss* filed a brief for the Connecticut Democratic Party as amicus curiae.

*Andrew S. Knott* filed a brief for the Public Interest Legal Foundation as amicus curiae.

*Opinion*

ROBINSON, C. J. The four plaintiffs, who are candidates in the August 11, 2020 primary election (August primary) for the Republican Party's nomination for the office of United States representative for Connecticut's First and Second Congressional Districts,[1] brought this original jurisdiction proceeding pursuant to General Statutes § 9-323[2] against the defendant, Denise W. Merrill, in her official capacity as the Secretary of the State. The plaintiffs sought declaratory and injunctive relief challenging the defendant's "ruling of an election official," which added a seventh category for absentee voting, "COVID-19," to the application for absentee ballots (application) for the August primary in contemplation of the ongoing coronavirus disease 2019 (COVID-19) global pandemic. The plaintiffs claimed that the defendant's change to the application violates article sixth, § 7, of the Connecticut constitution[3] because (1) she acted pursuant to Governor Ned Lamont's Executive Order No. 7QQ,[4] which itself violates article sixth, § 7, of the Connecticut constitution, and (2) it expanded the application beyond the existing limitations set forth by General Statutes § 9-135.[5] The plaintiffs also claimed that the application is inconsistent with the terms of Executive Order No. 7QQ. The defendant moved to dismiss the complaint, contending, inter alia, that the court lacked jurisdiction under § 9-323 because that election contest statute does not apply to primaries, and, in any event, the plaintiffs' constitutional challenge is not one that is cognizable under the election contest statutes. After a hearing held on July 20, 2020, this court granted the motion to dismiss for lack of subject matter jurisdiction under § 9-323.[6] This written opinion followed.

The pleadings and the record reveal the following undisputed facts and procedural history. On March 10, 2020, Governor Lamont declared a public health and civil preparedness emergency "throughout the [s]tate . . . as a result of the [COVID-19] outbreak in the United States and Connecticut . . . ."[7] Connecticut's congressional and presidential preference primary was rescheduled to August 11, 2020, from its originally scheduled date of April 28, 2020, because of the COVID-19 pandemic. Given the public health risk posed by in person voting during the ongoing pandemic, particularly with respect to the "significant portion of poll workers and volunteers [who] are [sixty years old] or older," Governor Lamont determined that "providing an alternative to [in person] voting could be particularly helpful in reducing the risk of transmission during voting among this population . . . ."[8] Accordingly, on May 20, 2020, he issued Executive Order No. 7QQ pursuant to his powers under General Statutes § 28-9 (b) (1).[9]

To provide that alternative to in person voting, Executive Order No. 7QQ, inter alia, "modified [§ 9-135] to

provide that, in addition to the enumerated eligibility criteria set forth in subsection (a) of that statute, an eligible elector may vote by absentee ballot for the [August primary] if he or she is unable to appear at his or her polling place during the hours of voting because of the sickness of COVID-19. *For purposes of this modification, a person shall be permitted to lawfully state [that] he or she is unable to appear at a polling place because of COVID-19 if, at the time he or she applies for or casts an absentee ballot for the [August primary], there is no federally approved and widely available vaccine for prevention of COVID-19.* It shall not constitute a misrepresentation under subsection (b) of [§] 9-135 . . . for any person to communicate the provisions of this modification to any elector or prospective absentee ballot applicant." (Emphasis added.)

In late June, 2020, the defendant, acting in her capacity as Commissioner of Elections with general supervisory authority over elections in Connecticut, issued the application for the August primary. The application added "COVID-19" as a new, seventh reason for requesting an absentee ballot; it is listed first among the reasons for "expect[ing] to be unable to appear at the polling place during the hours of voting,"[10] with an adjacent bold notation that "[a]ll voters are able to check this box, pursuant to Executive Order [No.] 7QQ." (Emphasis omitted.) The "special instructions" at the bottom of the application provide in relevant part: "The [s]tate . . . via Executive Order [No.] 7QQ, as interpreted by the [defendant] pursuant to [General Statutes § 9-3], has determined [that] (1) . . . having a [preexisting] illness allows you to vote by absentee ballot because your [preexisting] *illness* would prevent you from appearing at your [designated] polling place or (2) . . . absent a widely available vaccine, the existence of the COVID-19 virus allows you to vote by absentee ballot if you so choose for your own safety. To receive your absentee ballot please complete and sign this application (be sure to check 'Illness' for reason (1) or 'COVID-19' for reason (2) above) and return it to your [t]own [c]lerk using the enclosed postage prepaid envelope. . . ." (Emphasis in original.)

The defendant anticipates a significant increase in the use of absentee ballots this year and, working with a third-party mailing vendor (vendor), has mailed 1,274,414 applications to active registered voters between June 26 and July 1, 2020.[11] As of July 15, 2020, more than 100,000 voters have completed and returned their applications to local election officials for processing; 107,743 applications have been processed as of that date. The information contained in each application is then downloaded by the defendant's office onto a computer file, which was provided to the vendor approximately every other day beginning on July 17, 2020. The vendor was scheduled to mail the appropriate absentee ballots to the approved voters once those bal-

lots were finalized on July 21, 2020.

On July 1, 2020, the plaintiffs brought this petition and complaint pursuant to General Statutes §§ 9-323, 52-29, and 52-471, claiming that the defendant's preparation and issuance of the application pursuant to Executive Order No. 7QQ constituted a "ruling of an election official" for purposes of § 9-323. The plaintiffs first claimed that Executive Order No. 7QQ violates article sixth, § 7, of the Connecticut constitution because (1) that constitutional provision "expressly commits the prescription of absentee voting procedure to the General Assembly—not to the [g]overnor," and (2) the executive order "broadens the use of absentee ballots, in contravention of the strict reasons for which absentee ballots may be used in Connecticut elections as set forth in article sixth, § 7."[12] See footnote 3 of this opinion. Second, the plaintiffs claimed that the defendant's "decision to expand absentee voting based on Executive Order No. 7QQ, rather than limit absentee voting in accordance with the restrictions set forth by the legislature in . . . § 9-135, was a ruling of an election official" that violated the Connecticut constitution because (1) the defendant "lacks the constitutional authority to alter the parameters of who is entitled to vote by absentee ballot," (2) "[t]he reasons that electors may vote by absentee ballot are strictly limited by the Connecticut constitution and can . . . be expanded [only] by the electorate," and (3) the application "expands the use of absentee ballots for reasons beyond those specifically prescribed in article sixth, § 7, of the state constitution." See footnote 3 of this opinion. Finally, the plaintiffs claimed that the defendant's "decision to add a new category called 'COVID-19' and her failure to include the restrictions contained in Executive Order No. 7QQ concerning that reason—i.e., the voter being unable to appear and the unavailability of a vaccine—[constitute] a ruling of an election official" that "ignored the important qualification" to that effect in Executive Order No. 7QQ. Claiming to be aggrieved as candidates and electors by these various violations, the plaintiffs sought a judgment declaring that the application is both unconstitutional and based on an erroneous interpretation of Executive Order No. 7QQ and § 9-135. The plaintiffs also sought a prohibitory injunction precluding the defendant from mailing or distributing copies of the application to any Connecticut voters and a mandatory injunction directing her to recall any copies already mailed or distributed to any Connecticut voters.

On July 7, 2020, this court issued a case management order directing the parties to file briefs by July 17, 2020, with oral argument initially scheduled for July 22, 2020.[13] That same day, the defendant moved to dismiss this case. Subsequently, on July 16, 2020, the plaintiffs moved for an order "(1) enjoining the defendant . . . from issuing absentee ballots for COVID-19 reasons on

July 21, 2020, until this court has had the opportunity to issue a decision in this matter, or (2) alternatively, rescheduling the hearing currently scheduled for July 22, 2020, for July 20, 2020." This court then sua sponte scheduled a hearing for July 20, 2020, limited to the issues raised in the defendant's motion to dismiss and the plaintiffs' motion for an order.

After the July 20, 2020 hearing, this court granted the defendant's motion to dismiss for lack of jurisdiction under § 9-323 and took no action on the plaintiffs' motion for an order.[14] The court indicated that a written decision would be forthcoming. This is that decision.

In the motion to dismiss, the defendant contended, inter alia, that this court lacks subject matter jurisdiction under § 9-323. First, the defendant claims that the plaintiffs "cannot sue under the statute they have chosen or in this forum" because § 9-323, "by its terms . . . applies [only] to elections, not primaries," as the term "primary" is defined by General Statutes § 9-372 (11).[15] To this end, the defendant argues that this case should have been brought in the Superior Court under General Statutes § 9-329a,[16] which governs disputes arising during or out of primaries. In response, the plaintiffs rely on *Price* v. *Independent Party of CT—State Central*, 323 Conn. 529, 147 A.3d 1032 (2016), and the plain language of both §§ 9-323 and 9-329a in support of the proposition that § 9-323 applies to federal congressional primary elections because § 9-329a is expressly limited to primaries for state, district or municipal office, primaries for town committees, and the presidential preference primary, and does not include federal congressional primaries. They also rely on General Statutes § 9-381a,[17] which governs the procedure applicable in primary elections, to argue that § 9-323 governs federal primary elections because § 9-323 does not specifically *exclude* primary elections from its ambit. The plaintiffs further argue that a "primary" is commonly understood to be an "election" to nominate candidates for office. They further contend that the defendant incorrectly relies on the definition of "primary" in § 9-372 (11) because this court's decisions in *Feehan* v. *Marcone*, 331 Conn. 436, 204 A.3d 666, cert. denied,      U.S.    , 140 S. Ct. 144, 205 L. Ed. 2d 35 (2019), and *Republican Party of Connecticut* v. *Merrill*, 307 Conn. 470, 55 A.3d 251 (2012), establish that particular definition is inapplicable to the election contest statutes. The court, however, agrees with the defendant and concludes that it lacks jurisdiction because § 9-323 does not apply to primaries; instead, § 9-329a provides the proper vehicle for the plaintiffs' challenge in the Superior Court because a federal congressional primary is one for "district office" under that statute.

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause

of action that should be heard by the court. . . . A determination regarding a . . . court's subject matter jurisdiction is a question of law, particularly when it presents questions of constitutional and statutory interpretation. . . .

"Depending on the record before it, a . . . court ruling on a motion to dismiss for lack of subject matter jurisdiction . . . may decide that motion on the basis of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . Different rules and procedures will apply, depending on the state of the record at the time the motion is filed." (Citations omitted; internal quotation marks omitted.) *Feehan* v. *Marcone*, supra, 331 Conn. 446. In the present case, the court relies on the complaint supplemented by undisputed facts, as evinced in the stipulation filed by the parties.

Whether § 9-323 applies to federal congressional primaries "presents a question of statutory construction over which we exercise plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common-law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . Previous case law interpreting the statute remains instructive, because we do not write on a clean slate when this court previously has interpreted a statute . . . ." (Internal quotation marks omitted.) Id., 470–71.

Beginning with the previous case law, the court first looks to *Price* v. *Independent Party of CT—State Central*, supra, 323 Conn. 531–32, in which Justice Richard N. Palmer considered a challenge brought under § 9-323 to the Independent Party's caucus for purposes of choosing its candidates for the United States Senate. The plaintiffs posit that, in *Price*, the Secretary of the

State challenged the applicability of § 9-323 to the minor party caucus and that the court "did not find that argument dispositive" because it concluded instead that the minor party "caucus officials" whose rulings were challenged were not " 'election official[s]' " for purposes of the statute. Id., 543. *Price* does not *directly* support the plaintiffs, however, because the decision does not acknowledge, let alone address, an argument that § 9-323 does not apply to federal congressional primary elections.

Accordingly, the court turns to the text of § 9-323, which provides in relevant part that "[a]ny elector or candidate who claims that he is aggrieved by any ruling of any election official in connection with *any election* . . . for a senator in Congress and for representative in Congress or any of them . . . may bring his complaint to any judge of the Supreme Court . . . ." (Emphasis added.) Accordingly, the court must determine whether a primary is an "election" within the contemplation of § 9-323. The term "election," as used in § 9-323, is defined by General Statutes § 9-1 (d), which is the broadly applicable definitions provision that applies to the election contest statutes. See *Feehan* v. *Marcone*, supra, 331 Conn. 473. Section 9-1 (d) defines "election" as "any electors' meeting at which the *electors choose public officials* by use of voting tabulators or by paper ballots as provided in section 9-272 . . . ." (Emphasis added.) Because "primary" is not a statutorily defined term for purposes of the election contest statutes, the court looks to the common understanding of that term, as expressed in the dictionary, to determine whether it is an "election" as defined by § 9-323.[18] See, e.g., *Kuchta* v. *Arisian*, 329 Conn. 530, 537, 187 A.3d 408 (2018). In contrast to § 9-1 (d), the online dictionaries relied on by the plaintiffs define the word "primary" as "an election in which qualified voters *nominate or express a preference for a particular candidate or group of candidates for political office*, choose party officials, or select delegates for a party convention." (Emphasis added.) Merriam-Webster Online Dictionary, available at http://www.merriam-webster.com/dictionary/primary (last visited July 31, 2020); see also Dictionary.com, available at http://www.dictionary.com/browse/primary (last visited July 31, 2020) (defining "primary" as "a *preliminary election in which voters of each party nominate candidates* for office, party officers, etc.," or "a meeting of the voters of a political party in an election district for nominating candidates for office, choosing delegates for a convention, etc.; caucus"). The focus on the choice of "candidates" in a primary, as opposed to the choice of "public officials" in an election, as defined by § 9-1 (d), strongly suggests that a primary is not an "election" for purposes of § 9-323, particularly given the existence of a related statute to govern primary contests, namely, § 9-329a.

The plaintiffs contend, however, that this reading of

§ 9-323 leaves them without a remedy because § 9-329a is limited to primaries for "state, district or municipal office," primaries for town committees, and the presidential preference primary, with federal congressional primary elections being "[n]oticeably absent" from § 9-329a. This argument is belied by the plain language of § 9-329a (a), which provides that "[a]ny . . . elector or candidate aggrieved by a ruling of an election official in connection with *any primary held pursuant to (A) section 9-423, 9-425 or 9-464* . . . may bring his complaint to any judge of the Superior Court for appropriate action." (Emphasis added.) General Statutes § 9-423, which is contained in chapter 153 and governs primaries for "state, district or municipal office," is expressly cross-referenced in § 9-329a. The definitions in § 9-372, which apply to § 9-423; see *Feehan* v. *Marcone*, supra, 331 Conn. 472–73; clearly and unambiguously establish that federal congressional seats, be they for the House of Representatives or the Senate, are "state" or "district" offices within the meaning of that primary statute. Section 9-372 defines "state office" as "any office for which all the electors of the state may vote and includes the office of Governor, Lieutenant Governor, Secretary, Treasurer, Comptroller, Attorney General and *senator in Congress*, but does not include the office of elector of President and Vice-President of the United States . . . ." (Emphasis added.) General Statutes § 9-372 (14). Similarly, a seat in the United States House of Representatives would be a " '[d]istrict office,' " which is "an elective office for which only the electors in a district, as defined in subdivision (3) of this section, may vote . . . ." General Statutes § 9-372 (4); see General Statutes § 9-372 (3) (" '[d]istrict' means any geographic portion of the state which crosses the boundary or boundaries between two or more towns"). Thus, § 9-329a plainly and unambiguously furnishes a remedy for disputes arising from federal congressional primaries. To allow the plaintiffs the extraordinary relief of bypassing the Superior Court and proceeding directly to this court under § 9-323 would render § 9-329a superfluous, which is not a permissible reading of the statutory scheme. See, e.g., *State* v. *Davalloo*, 320 Conn. 123, 140–41, 128 A.3d 492 (2016). Accordingly, the court concludes that, under the plain and unambiguous language of the election contest statutes, § 9-329a, which required the plaintiffs to initiate this action in the Superior Court, governs challenges in the primary context, and this court lacks jurisdiction under § 9-323, which applies only to general elections for federal officials.[19]

The plaintiffs contend, however, that, should this court determine that jurisdiction over this case lies under § 9-329a rather than § 9-323,[20] it should have transferred the case to the Superior Court pursuant to Practice Book § 65-4[21] and then decided the case "as a matter of judicial economy" while sitting in its capacity as a Superior Court judge. See General Statutes § 51-198

(a) (Supreme Court justices are also Superior Court judges). The court declines to do so because Practice Book § 65-4 is a ministerial rule that, by its plain language, is applicable only to matters within the jurisdiction of the Supreme and Appellate Courts; it says nothing about cases that belong in the Superior Court in the first instance.[22] See E. Prescott, Connecticut Appellate Practice & Procedure (6th Ed. 2019) § 4-5:1, p. 296. Accordingly, this court concludes that not only jurisdiction, but assignment to the proper judicial authority, lies in the Superior Court in the judicial district of Hartford.[23]

The defendant's motion to dismiss is granted; no action is necessary on the plaintiffs' motion for an order.

* July 20, 2020, the date that the order of dismissal was issued, is the operative date for all substantive and procedural purposes.

[1] The plaintiffs are Mary Fay, an elector and candidate for United States representative for the First Congressional District, Thomas Gilmer, an elector and candidate for United States representative for the Second Congressional District, Justin Anderson, an elector and candidate for United States representative for the Second Congressional District, and James Griffin, an elector and candidate for United States representative for the First Congressional District. The plaintiffs became candidates for the nomination in the August primary by receiving either their party's endorsement or the support of 15 percent of the delegates at the Republican Party conventions held in May, 2020.

[2] General Statutes § 9-323 provides in relevant part: "Any elector or candidate who claims that he is aggrieved by any ruling of any election official in connection with any election for presidential electors and for a senator in Congress and for representative in Congress or any of them, held in his town, or that there was a mistake in the count of the votes cast at such election for candidates for such electors, senator in Congress and representative in Congress, or any of them, at any voting district in his town, or any candidate for such an office who claims that he is aggrieved by a violation of any provision of section 9-355, 9-357 to 9-361, inclusive, 9-364, 9-364a or 9-365 in the casting of absentee ballots at such election, may bring his complaint to any judge of the Supreme Court, in which he shall set out the claimed errors of such election official, the claimed errors in the count or the claimed violations of said sections. . . . If such complaint is made prior to such election, such judge shall proceed expeditiously to render judgment on the complaint and shall cause notice of the hearing to be given to the Secretary of the State and the State Elections Enforcement Commission. . . ." See also General Statutes § 51-199 (b) (5) ("any election or primary dispute brought to the Supreme Court pursuant to section 9-323 or 9-325" shall be "taken directly to the Supreme Court"); *In re Election of the United States Representative for the Second Congressional District*, 231 Conn. 602, 608–12, 653 A.2d 79 (1994) (describing procedure under § 9-323 for postelection complaints, including appointment of panel of three Supreme Court justices to try case).

[3] Article sixth, § 7, of the Connecticut constitution provides: "The general assembly may provide by law for voting in the choice of any officer to be elected or upon any question to be voted on at an election by qualified voters of the state who are unable to appear at the polling place on the day of election because of absence from the city or town of which they are inhabitants or because of sickness or physical disability or because the tenets of their religion forbid secular activity."

[4] Executive Order No. 7QQ provides in relevant part: "1. Absentee Voting Eligibility During COVID-19 Pandemic. Section 9-135 . . . is modified to provide that, in addition to the enumerated eligibility criteria set forth in subsection (a) of that statute, an eligible elector may vote by absentee ballot for the [August primary] if he or she is unable to appear at his or her polling place during the hours of voting because of the sickness of COVID-19. For purposes of this modification, a person shall be permitted to lawfully state [that] he or she is unable to appear at a polling place because of COVID-19 if, at the time he or she applies for or casts an absentee ballot for the [August primary], there is no federally approved and widely available vaccine

for prevention of COVID-19. It shall not constitute a misrepresentation under subsection (b) of [§] 9-135 . . . for any person to communicate the provisions of this modification to any elector or prospective absentee ballot applicant.

"2. Notice of Modification Required on Inner Envelope. [General Statutes §] 9-137 . . . is modified to provide that it shall not constitute a false statement for an elector to represent his or her eligibility to vote by absentee ballot pursuant to the modifications of [§] 9-135 in [§] 1 of this order, and the inner envelope described in [§] 9-137 shall contain a notice describing the modification in [§] 1 of this order.

"3. Authority for Secretary of the State to Modify Absentee Ballot Applications, Envelopes, and Printed Materials Regarding Eligibility. Notwithstanding any provision of [t]itle 9 of the . . . General Statutes or any other law or regulation to the contrary, the [defendant] shall be authorized to modify any required notice, statement, or description of the eligibility requirements for voting by absentee ballot on any printed, recorded, or electronic material in order to provide accurate information to voters about the modifications to absentee voter eligibility and related requirements of this order. . . ."

[5] General Statutes § 9-135 provides: "(a) Any elector eligible to vote at a primary or an election and any person eligible to vote at a referendum may vote by absentee ballot if he or she is unable to appear at his or her polling place during the hours of voting for any of the following reasons: (1) His or her active service with the armed forces of the United States; (2) his or her absence from the town of his or her voting residence during all of the hours of voting; (3) his or her illness; (4) his or her physical disability; (5) the tenets of his or her religion forbid secular activity on the day of the primary, election or referendum; or (6) the required performance of his or her duties as a primary, election or referendum official, including as a town clerk or registrar of voters or as staff of the clerk or registrar, at a polling place other than his or her own during all of the hours of voting at such primary, election or referendum.

"(b) No person shall misrepresent the eligibility requirements for voting by absentee ballot prescribed in subsection (a) of this section, to any elector or prospective absentee ballot applicant."

[6] As previously stated at the conclusion of the July 20, 2020 hearing, the court is grateful to all counsel for their professionalism in providing a very high quality of briefing and argument on an expedited basis.

[7] In issuing the executive order, Governor Lamont stated that "COVID-19 is a respiratory disease that spreads easily from person to person and may result in serious illness or death" and that "public health experts have indicated that persons infected with COVID-19 may not show symptoms, and transmission or 'shedding' of the coronavirus that causes COVID-19 may be most virulent before a person shows any symptoms . . . ." The United States Centers for Disease Control and Prevention "has recommended that people with mild symptoms consistent with COVID-19 be assumed to be infected with the disease," and "public health experts have recommended that, to prevent transmission of COVID-19, and in light of the risk of asymptomatic transmission and a significant rate of false negative [test results], everyone should assume they can be carrying COVID-19 even when [they] have received a negative test result or do not have symptoms . . . ."

[8] On May 6, 2020, the defendant's office issued a legal opinion explaining that the definition of "illness" under § 9-135 (a) is not "limited to some affliction that leaves an individual debilitated or bedridden." Given the increased risk from COVID-19 to individuals with conditions such as diabetes, chronic lung disease, or cancer, the defendant defined the term "illness" to include (1) "any registered voter who has a [preexisting] illness . . . because that voter's illness would prevent them from appearing at their [designated] polling place safely because of the [COVID-19] virus"; (emphasis omitted); and (2) "individuals who may have been in contact with a COVID-19 infected individual such as healthcare workers, first responders, individuals who are caring for someone at increased risk, as well as those [who] feel ill or think they are ill because of the possibility of contact with the COVID-19 virus . . . ."

[9] General Statutes § 28-9 (b) (1) provides in relevant part: "Following the Governor's proclamation of a civil preparedness emergency pursuant to subsection (a) of this section or declaration of a public health emergency pursuant to section 19a-131a, *the Governor may modify or suspend in whole or in part, by order as hereinafter provided, any statute, regulation or requirement or part thereof whenever the Governor finds such statute,*

*regulation or requirement, or part thereof, is in conflict with the efficient and expeditious execution of civil preparedness functions or the protection of the public health.* The Governor shall specify in such order the reason or reasons therefor and any statute, regulation or requirement or part thereof to be modified or suspended and the period, not exceeding six months unless sooner revoked, during which such order shall be enforced. Any such order shall have the full force and effect of law upon the filing of the full text of such order in the office of the Secretary of the State. . . . *Any statute, regulation or requirement, or part thereof, inconsistent with such order shall be inoperative for the effective period of such order.* Any such order shall be communicated by the Governor at the earliest date to both houses of the General Assembly." (Emphasis added.)

[10] The other six reasons provided on the application are (1) "[m]y active service in the Armed Forces of the United States," (2) "[m]y absence from the town during all of the hours of voting," (3) "[m]y illness," (4) "[m]y religious tenets forbid secular activity on the day of the election, primary or referendum," (5) "[m]y duties as a primary, election or referendum official at a polling place other than my own during all of the hours of voting," and (6) "physical disability."

[11] Ordinarily, 3 to 5 percent of voters vote by absentee ballot; the experience of similar jurisdictions indicates that between 50 and 80 percent of Connecticut voters will apply for, and likely use, absentee ballots for the August primary. The printing and mailing of the applications cost the state approximately $850,000.

[12] The plaintiffs also alleged in their petition and complaint that "[t]here is no COVID-19 exception in the Connecticut constitution."

[13] On July 6, 2020, the Connecticut Democratic Party moved to intervene in this proceeding "as a third-party plaintiff in order to present arguments that this court lacks original jurisdiction over this proceeding or, if it has jurisdiction, [that] it should uphold the actions of Governor Lamont and [the defendant] in allowing expanded absentee ballot access for the [August primary]." The plaintiffs opposed this motion. On July 8, 2020, this court denied the motion to intervene, noting the "unique nature of the statutory proceeding under . . . § 9-323, [the] language [of which] does not contemplate the participation therein of political parties as parties to the proceeding," and emphasizing "the vigorous defense being provided to the defendant by the Office of the Attorney General . . . ."

This court determined, however, that the "significant interest of the Connecticut Democratic Party in the outcome of this proceeding will be accommodated by the provision of amicus curiae status" and granted it permission to file an expanded amicus curiae brief. Subsequently, on July 17, 2020, this court also granted the motion of the Public Interest Legal Foundation to appear as amicus curiae and to file a brief in support of the plaintiffs.

[14] After this court issued its decision on July 20, 2020, the plaintiffs filed separate motions for reconsideration and for reconsideration en banc. On July 22, 2020, the plaintiffs subsequently moved to consolidate the motion for reconsideration en banc with a petition brought to Chief Justice Robinson pursuant to General Statutes § 52-265a challenging the Superior Court's judgment for the defendant in *Fay* v. *Merrill*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-20-6130532-S (July 22, 2020), which was filed on the evening of July 20, 2020, and decided on the morning of July 22, 2020. Chief Justice Robinson granted that § 52-265a petition on July 23, 2020; that appeal is pending under docket number SC 20486.

On July 23, 2020, this court granted the motion for reconsideration but denied the relief requested therein. That same day, the other nonrecused members of the Supreme Court joined with this court in dismissing the motion for reconsideration en banc and in taking no action on the motion to consolidate. The motion for reconsideration en banc was not cognizable under the plain language of § 9-323, which contemplates review by more than one justice of the Supreme Court only in postelection matters. See General Statutes § 9-323 ("[i]f such complaint is made subsequent to the election . . . [s]uch judge, with two other judges of the Supreme Court . . . shall . . . proceed to hear the parties"); see also *In re Election of the United States Representative for the Second Congressional District*, 231 Conn. 602, 608–12, 653 A.2d 79 (1994). In contrast to the express provisions of the other election contest statutes; see General Statutes §§ 9-324, 9-328, and 9-329a; which govern elections for state offices, municipal offices, and primaries, respectively, § 9-323 does not provide for further review by the Supreme Court pursuant to General Statutes § 9-325. Although the availability of review en banc may well be desirable as a policy matter in cases

decided by an individual Supreme Court justice under § 9-323, it is not this court's province to add a remedy that the plain and unambiguous statutory language of the election contest statutory scheme, read as a whole, indicates that the legislature obviously elected to omit. See, e.g., *Mayer* v. *Historic District Commission*, 325 Conn. 765, 780 and n.10, 160 A.3d 333 (2017).

[15] General Statutes § 9-372 (11) provides: " 'Primary' means a meeting of the enrolled members of a political party and, when applicable under section 9-431, unaffiliated electors, held during consecutive hours at which such members or electors may, without assembling at the same hour, vote by secret ballot for candidates for nomination to office or for town committee members . . . ."

[16] General Statutes § 9-329a provides: "(a) Any (1) elector or candidate aggrieved by a ruling of an election official in connection with any primary held pursuant to (A) section 9-423, 9-425 or 9-464, or (B) a special act, (2) elector or candidate who alleges that there has been a mistake in the count of the votes cast at such primary, or (3) candidate in such a primary who alleges that he is aggrieved by a violation of any provision of sections 9-355, 9-357 to 9-361, inclusive, 9-364, 9-364a or 9-365 in the casting of absentee ballots at such primary, may bring his complaint to any judge of the Superior Court for appropriate action. In any action brought pursuant to the provisions of this section, the complainant shall file a certification attached to the complaint indicating that a copy of the complaint has been sent by first-class mail or delivered to the State Elections Enforcement Commission. If such complaint is made prior to such primary such judge shall proceed expeditiously to render judgment on the complaint and shall cause notice of the hearing to be given to the Secretary of the State and the State Elections Enforcement Commission. If such complaint is made subsequent to such primary it shall be brought, not later than fourteen days after such primary, or if such complaint is brought in response to the manual tabulation of paper ballots, described in section 9-320f, such complaint shall be brought, not later than seven days after the close of any such manual tabulation, to any judge of the Superior Court.

"(b) Such judge shall forthwith order a hearing to be held upon such complaint upon a day not more than five nor less than three days after the making of such order, and shall cause notice of not less than three days to be given to any candidate or candidates in any way directly affected by the decision upon such hearing, to such election official, to the Secretary of the State, the State Elections Enforcement Commission and to any other person or persons, whom such judge deems proper parties thereto, of the time and place of the hearing upon such complaint. Such judge shall, on the day fixed for such hearing, and without delay, proceed to hear the parties and determine the result. If, after hearing, sufficient reason is shown, such judge may order any voting tabulators to be unlocked or any ballot boxes to be opened and a recount of the votes cast, including absentee ballots, to be made. Such judge shall thereupon, if he finds any error in the ruling of the election official, any mistake in the count of the votes or any violation of said sections, certify the result of his finding or decision to the Secretary of the State before the tenth day following the conclusion of the hearing. Such judge may (1) determine the result of such primary; (2) order a change in the existing primary schedule; or (3) order a new primary if he finds that but for the error in the ruling of the election official, any mistake in the count of the votes or any violation of said sections, the result of such primary might have been different and he is unable to determine the result of such primary.

"(c) The certification by the judge of his finding or decision shall be final and conclusive upon all questions relating to errors in the ruling of such election official, to the correctness of such count, and, for the purposes of this section only, such alleged violations, and shall operate to correct any returns or certificates filed by the election officials, unless the same is appealed from as provided in section 9-325. In the event a new primary is held pursuant to such Superior Court order, the result of such new primary shall be final and conclusive unless a complaint is brought pursuant to this section. The clerk of the court shall forthwith transmit a copy of such findings and order to the Secretary of the State."

[17] General Statutes § 9-381a provides: "Except as otherwise provided by statute, the provisions of the general statutes concerning procedures relating to regular elections shall apply as nearly as may be, in the manner prescribed by the Secretary of the State, to primaries held under the provisions of this chapter."

[18] The court agrees with the plaintiffs that the definition of "primary" used

in § 9-372 (11), on which the defendant relies, is inapplicable to the election contest statutes, including § 9-323. See *Feehan* v. *Marcone*, supra, 331 Conn. 472–73 (concluding that definition of "municipal election" in § 9-372 (7) did not render General Statutes § 9-328, which governs municipal election contests, applicable to state legislative election because § 9-372 expressly does not apply to election contest statutes in chapter 149, requiring court instead to follow definitions of "municipal office" and "state election" as set forth in § 9-1 (h), (i) and (s)); *Republican Party of Connecticut* v. *Merrill*, supra, 307 Conn. 492 (concluding that "[t]he definitions in § 9-372 . . . do not, by their own terms, apply to the ballot ordering statute" because General Statutes § 9-249a "is conspicuously absent from the list of statutes to which the definitions in § 9-372 apply").

[19] The court briefly addresses the defendant's argument that, under *Wrotnowski* v. *Bysiewicz*, 289 Conn. 522, 958 A.2d 709 (2008), and *Scheyd* v. *Bezrucik*, 205 Conn. 495, 535 A.2d 793 (1987), even if it is assumed that § 9-323 is applicable to federal congressional primaries, this case "fundamentally is a challenge to the constitutionality of Executive Order [No.] 7QQ, and this court lacks jurisdiction to consider such claims under § 9-323." Whether the plaintiff is aggrieved by a ruling of an elections official implicates the court's subject matter jurisdiction under the election contest statutes. *Arciniega* v. *Feliciano*, 329 Conn. 293, 300–301 n.4, 184 A.3d 1202 (2018); see id., 302–303 (defining term "ruling of an election official").

It is well established that our election contest statutes "may not [be] use[d] . . . to challenge a law or regulation under which the election or primary election is held by claiming aggrievement in the election official's obedience to the law. In such a case the plaintiff may well be aggrieved by the law or regulation, but he or she is not aggrieved by the election official's rulings which are in conformity with the law." *Wrinn* v. *Dunleavy*, 186 Conn. 125, 134 n.10, 440 A.2d 261 (1982). This court has followed this footnote from *Wrinn* in concluding that courts lack jurisdiction under the election contest statutes to consider constitutional challenges to underlying election laws, reasoning that "[c]onstitutional adjudication . . . requires study and reflection and may therefore, as a general matter, be deemed less appropriate for accelerated disposition." (Internal quotation marks omitted.) *Wrotnowski* v. *Bysiewicz*, supra, 289 Conn. 527–28; see id., 528–29 (Chief Justice Chase T. Rogers dismissed complaint filed under § 9-323 challenging Secretary of State's failure to verify natural born citizenship of presidential candidate as "claim[ing] only that the existing election laws governing presidential elections are not adequate to ensure compliance with article two, § 1, of the federal constitution"); *Scheyd* v. *Bezrucik*, supra, 205 Conn. 502–503 (concluding that challenge to constitutionality of minority representation statute, General Statutes § 9-167a, was not cognizable under General Statutes § 9-328, which governs municipal election contests).

Having considered these authorities, the court concludes that the election contest statutes, including § 9-323, do not confer jurisdiction over the plaintiffs' fundamental constitutional challenges to Executive Order No. 7QQ, which the defendant—acting as an elections official—implemented via the application. If § 9-323 had conferred jurisdiction in this case, the court would, however, have had jurisdiction over the plaintiffs' claim that the application is not itself faithful to Executive Order No. 7QQ.

[20] The plaintiffs correctly note that their failure to plead the correct statute did not render their complaint defective, given that the defendant has been "sufficiently apprised of the nature of the action . . . ." (Emphasis omitted; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, 312 Conn. 286, 302, 94 A.3d 553 (2014); see also *Spears* v. *Garcia*, 66 Conn. App. 669, 675–76, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003). But cf. Practice Book § 10-3 (a).

[21] Practice Book § 65-4 provides in relevant part: "Any appeal or cause brought to the Supreme Court or the Appellate Court which is not properly within the jurisdiction of the court to which it is brought shall not be dismissed for the reason that it was brought to the wrong court but shall be transferred by the appellate clerk to the court with jurisdiction and entered on its docket. . . ."

[22] Moreover, even if Practice Book § 65-4 allowed the transfer envisioned by the plaintiffs, it have would been highly imprudent for this court, as an appellate jurist, to have acted as a Superior Court judge in this particular matter. Unlike § 9-323, § 9-329a (c) provides an expedited appellate remedy with the Supreme Court pursuant to General Statutes § 9-325. See footnote 16 of this opinion. Were this court to try this case while sitting as a Superior Court judge, it would have disqualified itself from participating in its final

resolution, rendering that practice highly inadvisable in a case of such import. See Practice Book § 1-22 (a) ("nor may the judicial authority sit in appellate review of a judgment or order originally rendered by such authority"); cf. Practice Book § 60-6 ("[w]ithout the permission of the chief justice, the justices of the Supreme Court . . . will not, as judges of the Superior Court . . . pass orders which may be the subject of an appeal, unless it appears that there is a necessity for prompt action, and that no other judges having jurisdiction over the matter can conveniently act").

[23] Given the court's conclusion that it lacks jurisdiction under § 9-323 and that this matter should not have proceeded further before this court under § 9-329a, it declines to consider the defendant's argument that, under, for example, *Lazar* v. *Ganim*, 334 Conn. 73, 87, 220 A.3d 18 (2019), the plaintiffs are not aggrieved because "they have not articulated a specific, personal and legal interest that has been injured by the defendant's conduct" other than "their general and abstract interests in having a fair and honest election and not having their votes diluted by what they believe are illegal absentee voting procedures." (Internal quotation marks omitted.) Because this issue will be litigated in the public interest appeal challenging the Superior Court's judgment for the defendant in *Fay* v. *Merrill*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-20-6130532-S (July 22, 2020); see footnote 14 of this opinion; this court refrains from considering the issue of aggrievement at this point.

Because it is a special defense that does not implicate this court's subject matter jurisdiction, the court also need not address at this time the defendant's claim that the doctrine of laches bars this action. See, e.g., *Price* v. *Independent Party of CT—State Central*, supra, 323 Conn. 544 ("[t]his court has held that (1) [l]aches consists of an inexcusable delay [that unduly] prejudices the defendant, and (2) [t]he burden is on the party alleging laches to establish that defense" (internal quotation marks omitted)). But see id., 544–47 (addressing laches claims in dictum). Similarly, the court need not consider the defendant's argument that it should abstain from exercising jurisdiction over this case, which involves an impending election, under the principle announced in *Purcell* v. *Gonzalez*, 549 U.S. 1, 4–5, 127 S. Ct. 5, 166 L. Ed. 2d 1 (2006).